**Frank KRUMM, Appellant,**

v.

**Wallace STREILER, Respondent.**

No. 46330.

Supreme Court of Missouri.

Division No. 1.

June 9, 1958.

J. O. Swink, Farmington, for appellant.

Roberts & Roberts, J. Richard Roberts, Farmington, for respondent.

HOLLINGSWORTH, Presiding Judge.

This case arises out of a dispute between plaintiff and defendant as to the location of the boundary line between plaintiff's farm lying to the north of that line and defendant's farm lying to the south thereof, both in Perry County, Missouri. Plaintiff sued to quiet title to his entire farm, allegedly containing 61.41 acres, in which he set forth claim of ownership in fee simple to a specifically described tract. In reality, however, the only portion of the land in dispute is a narrow, irregular strip of land adjacent to a creek meandering in a general east-west direction in close proximity to the boundary line respectively asserted by each of the parties. The petition prayed ascertainment of title, a decree adjudging plaintiff to be the fee simple owner of the farm as described in his petition, and a permanent injunction against defendant from asserting any right or title whatever to any portion thereof. Defendant, by his answer, neither affirmed nor denied plaintiff's ownership of land described in the petition, but asserted that there was, and for more than fifty years had been, a fence between their respective farms and that he and his predecessors in title had openly and exclusively possessed and asserted under hostile claim of ownership title to all of the land to the south of said fence and thereby had acquired title by adverse possession to all of the land south of said fence, and prayed a decree to the effect and an injunction against plaintiff from asserting ownership thereof.

Trial of these issues to the court resulted in the court's finding the facts to be as alleged in defendant's answer and decreeing defendant to be the owner of the land south of said fence, specifically describing it as set forth in the deed received by defendant from his immediate predecessor in title, as corrected by a subsequent deed. Plaintiff has appealed. Title to real estate is involved, vesting this court with jurisdiction of the appeal. Klaar v. Lemperis, Mo., 303 S.W.2d 55, 56; Grimes v. Armstrong, Mo., 304 S.W.2d 793, 796.

Plaintiff's claim of title to the land described in his petition is founded upon the deed executed and delivered to him in November, 1923, by his immediate predecessor in title, William G. Dippold. In 1955, at the instance of plaintiff, Raymond Donze, a qualified surveyor, made a survey and prepared a plat of plaintiff's farm. That survey and plat were made by Donze after examination of plaintiff's deed, the survey and conveyance records of Perry County and from information gleaned from plaintiff and others, especially Albert Courtois, whose farm lay to the east of plaintiff. The plat of that survey, Exhibit "A", was introduced in evidence by plaintiff and a photographic copy thereof is here shown:

Exhibit "A"

PLAINTIFF'S EXHIBIT
A
DATE

The tract marked "F. Krumm" in the northwest corner of the plat shows the land claimed by plaintiff. The farm of Albert Courtois is shown in the northeast corner of the plat. Defendant's farm lies to the south of plaintiff's and Courtois' farms. Defendant acquired his farm from his father, August Streiler, in 1938, who had acquired it from defendant's uncle, Maximillian Streiler, by deed dated September 28, 1893.

According to the plat, the south line of plaintiff's farm extends along the courses from Points 3 to 11, inclusive, thereby placing plaintiff's southern boundary line (the line in dispute) generally south of the creek and somewhat deeply to the south of the creek (Points 9–11) as the line approaches the west boundary line common to both plaintiff's and defendant's farms. It was defendant's contention and the court found that the fence which "divides the lands owned by the plaintiff and the defendant runs in an east and westernly direction along and on the north side of the creek * * *." Hence, it is apparent that the essential matter for review is whether the credible evidence reasonably establishes the finding and judgment of the trial court. In this connection, it must be stated that due to the manner in which the testimony was elicited some of it has no meaning whatever to a reviewing court. Counsel propounded many of their questions and the witnesses answered those questions by pointing out on the plat unidentifiable points, areas, fences, fields, bluffs, hills, a spring, "pile of rocks", et cetera, or by mere reference to them in general terms. Without the aid of some record identification of the points or location of the places or objects to which counsel and the witnesses referred, the purport of such evidence cannot be understood. However, aided by the plat, we shall set forth such of it as is reasonably susceptible of meaning and is pertinent to the issue of adverse possession.

Albert Courtois, a witness in behalf of plaintiff, testified: He was present when plaintiff and Mr. Donze made the survey shown by the plat and assisted in the location of certain points. The survey began at the northeast corner of Courtois' farm, evidenced by an iron pipe placed there during a former survey. The line thence ran southwardly to a point, which Mr. Courtois estimated to be the southeast corner of his land, as a starting point. The surveyor then proceeded westward, surveying the line between Courtois and plaintiff on the north and defendant on the south. On cross-examination, the witness admitted that the southeast corner of his farm, as shown by his deed, was supposed to be on the north bank of the creek, but that inasmuch as the bank had eroded throughout the years the stake set at Point 1 of the survey was actually placed in the bed of the creek, as the estimated point of beginning and that the other points were then run as shown on the plat. The witness further admitted there was a fence between plaintiff's farm and defendant's farm, described by the witness as "Krumm's fence". That fence was "on the north side (of the creek) all the way up", and had been so located ever since the witness came to his farm thirty-five years ago. The witness further admitted that in an undefined area near the point where the boundary line between plaintiff and defendant joined their common west boundary line there was a 3½ acre tract south of the creek which defendant and his father had cultivated ever since the witness came to his farm. The witness further testified that there was a fence enclosing the 3½ acre tract and that formerly there had been a fence on the creek bank along the north side of the tract, but it had rotted down thirty years ago. The fence along the north side of the creek had remained and had been "kept up" during all of those years.

Plaintiff testified: The fence along the north side of the creek was on his property and he never considered it the boundary line between him and defendant. At one time, defendant's father had main-

tained a fence south of the creek and portions of it were still visible. Plaintiff admitted, however, that the Streilers had always cultivated the 3½ acre tract up to "nearabout" the south creek bank and that the line surveyed by Donze as plaintiff's south line bisected that tract near "its middle". Plaintiff further admitted that the fence on the north side of the creek is "just up on the bank on the north side" of the creek and runs "reasonably close to the creek all the way"; and that there had been no fence on the south side of the creek other than that enclosing the 3½ acre tract since plaintiff had acquired his farm in 1923. Plaintiff also admitted that in 1950 he showed Harry Diemund a point on the north side of the creek as being the point of the southwest corner of his farm, but explained that "it was all caved out" and he "only thought it was there"; and that the point shown Diemund lay 55 feet to the north of the point shown on Donze's survey.

Plaintiff further testified on cross examination:

"Q. Everybody down there understood all through that community that that creek was the line ever since you've lived there; that's been notorious, everybody has heard that, haven't they? A. Well, they just called that the line, the dividing line; that's what they called it.

"Q. And that's been ever since you lived there for thirty-five years? A. Yes, sir.

"Q. And was a long time before you lived there as far as you know? A. As far as I know."

The following testimony was adduced in behalf of the defendant:

Leonard Merkel, a farmer, aged 52 years, testified: He was born and has lived all of his life on a farm immediately west of plaintiff. The Streilers farmed the 3½ acre tract above mentioned ever since he knew the land and before his time had cut logs and ties from it. There has been a fence "just on the north side of that creek" between plaintiff and the Streilers for the past thirty years; and never prior to the instant suit had he heard of plaintiff's claiming any land to the south of it.

Harry Diemund, a farmer aged 38 years, testified: He lives north of the parties to this action and is acquainted with their farms. In 1950 or 1951, plaintiff pointed out to the witness a place on the north bank of the creek as the southwest corner of plaintiff's farm and, about 200 feet further to the east, plaintiff pointed out to him another corner "right there north of the creek in those rocks." There is and has been a fence along the north side of the creek as long as witness can remember.

John Hansen, aged 67 years, testified: He has lived in the community all of his life and is acquainted with the Krumm and Streiler farms. The 3½ acre tract was cleared by Streiler's tenant all the way to the creek in 1908 and Streiler has farmed it ever since. At one time there was a sawmill on plaintiff's farm and defendant cut logs along the south bank of the creek and had them sawed at plaintiff's mill. At that time plaintiff was "logging his farm off too" and he had all the fences taken down. The witness always understood the creek was the division line between plaintiff's and defendant's farms.

John Sutterer testified: He was acquainted with both farms. He "boarded" with Joel Thorpe in 1902 when the latter owned the Krumm farm. He married Mr. Thorpe's daughter and had farmed some of the land. At that time there was a fence along the north side of the creek which was considered by Mr. Thorpe as the division line between the two farms. There is now a fence along the north bank of the creek and the witness never heard of any of the Thorpes claiming land south of that fence.

Defendant, aged 54 years, testified: He acquired his farm from his father, August Streiler, in 1938. The 3½ acre tract was "cleared" before he acquired it. About forty years ago, before there was a stock law, a tenant on the farm, then owned by the defendant's father, placed a fence on the land near a spring to the east of Point 8 on the plat for "the purpose of keeping the stock" from going where the land was cultivated. That fence was torn down when the logs were cut, which was after the stock law went into effect. It was never rebuilt. Defendant also built a fence up on the bluff south of the 3½ acre tract in 1941, between his line and the line of Leonard Merkel's farm to the west. It enclosed the tract down to the creek and its purpose was to keep livestock off the tract. That fence joined plaintiff's fence on the north side of the creek. The fence north of the creek runs the entire distance between plaintiff's and defendant's farms and has been there as long as the witness can remember. Defendant has repaired it frequently. From time to time, other fences were built from south to north on defendant's land and have "hooked up" with plaintiff's fence on the north side of the creek. They were built for "pasturing" and to keep livestock within certain areas of defendant's farm. The fence north of the creek has been in its present location and defendant's father claimed ownership to the land south of it as early as defendant can remember. Defendant and his brother cut logs from the land "right up to the creek" and thereafter farmed the land without plaintiff's making any objection whatever. Logs were also cut along the south creek bank from the spring eastward, without any objection being made by plaintiff. The first knowledge that defendant had that plaintiff claimed any land south of that fence was in 1954 or 1955.

On cross-examination, defendant testified:

"Q. Have you—do you now claim that you own anything greater in this particular tract of land than that which was deeded to you by your father in 1938? A. No, sir.

"Q. That's all you're claiming to? A. (Witness nodding his head.)

*   *   *   *   *   *

"Q. The question was what do you base your claim on that your land runs to the north side of this creek? A. That's the way it always was claimed.

*   *   *   *   *   *

"Q. Alright. What claim have you got except the deed from your father since then? A. Well, he always claimed it that way.

"Q. Well, did he deed it to you that it went clear to the north side of the creek? A. Yes, sir.

"Q. Are you claiming that whatever interest you got came from the deed from your father and nothing else? Are you claiming anything more than what your father deeded to you? A. No."

Defendant heard his father say that the fence along the north side of the creek was the boundary line. After the dispute between plaintiff and defendant arose, it was discovered by defendant, with the aid of Mr. Donze and Lucius Robb, that there was a discrepancy in the deed received by defendant from his father, August Streiler, and the deed received by defendant's father from Maximillian Streiler. That discrepancy consisted of a difference in the number of feet set forth in two of the calls in defendant's deed. Mr. Robb prepared and defendant procured from his brothers and sisters a deed correcting the description in his deed so that it corresponded with the deed given by Maximillian Streiler to defendant's father. That deed, dated May 3, 1955, was duly recorded and, at the trial, was admitted in evidence. The description therein contained is the description of defendant's land as deter-

mined by the court and set forth in the decree.

■ Defendant had the burden of establishing each and every element required to gain title by adverse possession, which elements are: (1) the possession must be hostile, that is, under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous. State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176; Grimes v. Armstrong, Mo., 304 S.W.2d 793, 799. However, on this appeal, the case having been tried without a jury, we are required by statute to review the case upon both the law and the evidence as a suit of an equitable nature, but we do not set aside the judgment of the trial court unless it is clearly erroneous and, in so determining, we must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses. Section 510.310, subd. 4 RSMo 1949, V.A.M.S.; Grimes v. Armstrong, Mo., 304 S.W.2d 793, 797–798.

Plaintiff's first contention is that inasmuch as his testimony was that his fence had never been treated as the boundary line between his and defendant's farms, it constituted an "unclaimed line as a fence not claimed to be on the line is not binding." If that were the only evidence in the case, the argument would be of weight, but obviously that is not the case. The evidence of defendant and several of his witnesses was directly to the contrary. It was the duty of the trial court and is the duty of this court to consider and evaluate all of the evidence.

Plaintiff further contends that when defendant testified on cross-examination that he did not claim any land other than the tract deeded to him by his father, such testimony amounted to an admission that his possession was due to mistake or in ignorance of the true line, without intention to claim beyond it, and was not, therefore, "hostile, that is, under a claim of right." In so contending, plaintiff misconstrues the true meaning and effect of defendant's testimony. His testimony was that he based his claim to all of the land south of the fence running along the north side of the creek because (1) "that's the way it always was claimed"; (2) his father always so claimed; and (3) it was so deeded to him by his father. We have repeatedly declared the law to be as stated in Bell v. Barrett, Mo., 76 S.W.2d 394, 396: "In determining the character of the possession, the important factor is, not whether the true line is known or whether there is a mistake as to the boundary, since the location of a fence beyond the true boundary line is usually due to mistake, but it is the intent with which the boundary fence is built and the unequivocal character of the claim made thereafter, which is decisive of the question. It is not necessary that the rights of the true owner be definitely known before an unequivocal claim can be made against his rights." And in State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176–177, it was again stated: "The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. * * * One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership." See, also, Agers v. Reynolds, Mo., 306 S.W.2d 506, 511–512; Mooney v. Canter, Mo., 311 S.W.2d 1, 5, and cases therein cited. According to defendant's evidence, his claim of ownership was unconditional and hostile.

■ Plaintiff also insists that the "evidence does not justify a finding that [his]

fence on the north side of the creek was a division fence, that it was ever agreed upon as the boundary or that Streiler's partial possession up to this fence was accompanied by a claim of ownership", citing Foard v. McAnnelly, 215 Mo. 371, 114 S.W. 990; Ackerman v. Ryder, 308 Mo. 9, 271 S.W. 743; Courtner v. Putnam, 325 Mo. 924, 30 S.W.2d 126, 131; Grimes v. Armstrong, Mo., 304 S.W.2d 793, 800. This action, wherein the evidence and issues of fact were entirely different from the facts in the cases cited by plaintiff, does not rest upon any claim of an agreed line. Rather is it based upon a claim of hostile, actual, open and notorious, exclusive and continuous possession by defendant and his predecessors in title for approximately fifty years. The question is: Does the evidence warrant the finding of the court that defendant's title ripened under that claim? It definitely tended to show that the only continuous fence between the farms was the fence north of the creek which was there when plaintiff purchased his farm in 1923; that defendant and his father actually, exclusively, openly and continuously occupied and exercised dominion over the land south of the fence for approximately fifty years and that they did so under a claim of right; that for approximately thirty-five years plaintiff knew that the creek was called the dividing line and that he, of course, knew that the only fence separating their farms was immediately north of the creek; and that plaintiff showed Harry Diemund two points north of the creek as corners in the irregular southern line of his farm. That evidence, if believed, was sufficient to support a finding that defendant had acquired title by adverse possession to the land up to the fence. The trial court, who saw and heard the witnesses, by his finding and decree gave full credence to it. We must hold that such a finding is not clearly erroneous.

Plaintiff finally contends that the trial court "erroneously accepted defendant's Exhibit 1 [the deed of correction], as the basis of its judgment since this is a deed dated May 3, 1955, and there was no evidence to support a judgment giving it greater credence than [plaintiff's] survey, Exhibit 'A', which survey started from a government corner." We think it clear that the trial court did not accept the deed of correction as the basis of its judgment. The judgment was predicated upon defendant's evidence to the effect that defendant, by the process of adverse possession for more than ten years, had acquired title up to the fence on the north side of the creek. Inasmuch as the survey offered by plaintiff showed the line to be generally south of the creek, the court, of necessity, rejected that survey. The trial judge had before him plaintiff's deed from Dippold, the survey, the deed from Maximillian Streiler to August Streiler, the deed from August Streiler to defendant, the deed of correction, and the oral testimony of the witnesses. Evidently he found that the deeds in the Streiler chain of title, as corrected, accurately fixed the division line, *as contended by defendant and as shown by his evidence.* Furthermore, plaintiff does not contend that the description of defendant's land, as set forth in the decree, includes any land north of the fence which the trial court found to be the division line. The contention must be denied.

We are convinced and hold the judgment was for the right party. It should be and is affirmed.

All concur.