Essie ENNIS, Respondent,

v.

Joseph F. KORB et al., Defendants,

Agnes Davis et al., Appellants.

No. 48069.

Supreme Court of Missouri,
Division No. 1.
June 12, 1961.
Rehearing Denied July 10, 1961.

Thomas M. Sullivan, Hugh B. Downey, Downey, Abrams & Sullivan, Kansas City, for appellants.

Ennis, Browne & Martin, Allan R. Browne, Kansas City, for respondent.

DALTON, Judge.

This is an action to quiet and determine title to the north twenty-seven feet of Lot 200, Altamont Addition, in Kansas City, Jackson County, Missouri. The facts constituting the claim and the prayer for relief were joined in the same count with a statement of a claim for damages for trespass to the described real estate and for the destruction of a fence. Plaintiff claimed title by adverse possession and by a conveyance (an unrecorded and lost deed) from a prior owner. No relief was asked with reference to the lost deed. Joseph Korb and Eunice Korb, who had recently purchased the property, were made defendants. After notice of lis pendens had been filed, the Korbs conveyed Lot 200 to Agnes Davis, who executed a deed of trust thereon. Thereafter, Mrs. Davis and Leo Mandl, the trustee in the deed of trust, were made defendants and defendant Davis answered and filed a counterclaim claiming title to the entire lot and asked that her title thereto be quieted and determined.

No facts were stated in either plaintiff's second amended petition or in defendant Davis' counterclaim to invoke the jurisdiction of a court of equity (both stated actions at law), but nevertheless the parties agreed that the action for damages

would be tried to a jury and the actions to quiet and determine title would be tried to the court without the aid of a jury; and that the evidence in support of the several claims would be heard at the same time and on substantially the same evidence. Only a part of the evidence was not heard by the jury. At the conclusion of all the evidence, the issue of damages for trespass to real estate and for the destruction of the fence was submitted to the jury and a verdict was returned in favor of defendants. The issue of title was submitted to the court, sitting without the aid of a jury, and the court found that "the issues as to quieting title, as set forth in plaintiff's second amended petition for damages and other relief and in the counterclaim of defendant Davis, should be determined in favor of plaintiff and against all defendants."

The court entered a judgment on the jury's verdict in the action for damages for trespass in favor of defendants Joseph F. Korb and Eunice M. Korb and against the plaintiff. The court further entered judgment quieting and determining title in plaintiff to all of the north twenty-seven feet of Lot 200, Altamont Addition to Kansas City, "except a rectangle in the southeast corner of said north twenty-seven (27) feet, said rectangle measuring fourteen (14) feet east and west and twenty-one feet north and south", and declared that plaintiff was the fee simple owner thereof free and clear of all liens and encumbrances or of any claim by any of the defendants. The court further fixed the reasonable market value of the plaintiff's portion of said Lot 200 at $300, as of the 1st of August, 1957, and assessed one half of the costs against the plaintiff and the remaining one half against the other defendants.

Defendants Davis and Trustee Mandl have appealed from the judgment as entered, but make no complaint of the trial court's failure and refusal to quiet the title to the remaining portion of Lot 200 in defendant Davis. Instead, appellants contend that the court erred in holding that the plaintiff had acquired title to a portion of said Lot 200 by adverse possession for the statutory period. They insist (1) that the possession, if any, by the plaintiff was permissive and not adverse; and (2) that there was no evidence that the possession, if any, of plaintiff was actual, open or notorious.

Plaintiff's evidence tended to show that she owned a residence, referred to as 3125 Michigan Avenue; and that the lot on which the residence was located faced west on the east side of Michigan Avenue. The front portion of the residence was about six feet from the south line of plaintiff's lot, but the lot was narrower in the rear and the south end of the back porch of plaintiff's residence extended about two feet over onto the rear of the adjacent lot, which adjacent lot was fifty feet wide east and west, and faced south on the north side of Linwood Boulevard. This property (1904 Linwood) was the second lot east of Michigan Avenue. The first or corner lot, at Michigan and Linwood, had been owned by defendant Davis for some years. The rear of her lot also adjoined the south side of plaintiff's lot, but, as stated, the south side of plaintiff's house was further from the rear or north part of this lot than it was from the next lot to the east, on which lot plaintiff's house encroached. As stated, defendant Davis, after this litigation started, acquired Lot 200, and the residence thereon, 1904 Linwood, from the Korbs. The rear (or north wall) of a garage or shed located in the northeast portion of Lot 200 was about five feet from the south end of plaintiff's porch, where it extended across the line onto Lot 200. There was a walk of stones or concrete slabs extending from the front to the rear along the south side of plaintiff's residence. The walk extended upon and over the five foot space between plaintiff's back porch and the rear of the garage on Lot 200. There was a gate across the walk, between the garage and the porch. The gate opened into plaintiff's back yard.

There was a fence from the southwest corner of this garage west to the west line of the lot, a distance of thirty-six feet. The fence then extended south along the west line of the lot to where it was attached to the house on Lot 200.

It was stipulated between the parties that, in 1938, the record title to Lot 200 (1904 Linwood) was in Jessie L. Griffith; that the Korbs had obtained a deed on February 15, 1956 from the devisee under Miss Griffith's will; and that the Korbs had executed a deed to defendant Davis on July 29, 1958. The suit had been filed August 9, 1957, and the notice of lis pendens was filed December 5, 1957.

Plaintiff testified that she had resided at 3125 Michigan Avenue since 1920; that, in 1938, she first learned that a portion of her house was upon the adjacent lot owned by her close personal friend Jessie L. Griffith; that when she discovered this fact she went over to see Miss Griffith; and that following that visit a fence was built on the Griffith lot from the southwest (front) corner of the garage or shed on the Griffith property west to the west lot line. This fence was built twenty-seven feet south of the north line of the Griffith lot and separated the rear portion of the Griffith lot from the front portion where the residence was located. The fence was made of woven wire with iron posts. The fence had an iron-rail top, which extended through the top of the iron posts. There was no opening in the fence. The fence was up continuously from 1938 to 1957, when it was taken down by Mr. Korb. The garage and its overhang occupied a space fourteen feet wide and twenty-one feet deep. It lacked about six feet of extending to the rear line of Lot 200. While there were doors on the west side of the garage or shed, plaintiff had seen them opened only once in some twenty years and that was when Miss Griffith opened a door to admit plaintiff to the garage to see something Miss Griffith had stored therein. The only way one could reach the disputed area from the Linwood side was to go around the west side of the fence by a big tree, but it was rough in there and just about wide enough for a person to get through.

Subsequent to 1938, the plaintiff took care of the area north of the fence (between her house and the fence). She planted flowers and shrubs thereon and had a beautiful yard and a bath for birds. She claimed and asserted ownership and possession of the property between her house and the fence for more than nineteen years. No one else claimed it or asserted ownership thereto. She had the lawn mowed over the area whenever she had her front yard mowed, and she kept it in nice shape. No one ever protested her occupancy, or any use of the premises. She offered to pay taxes on it, but the collector refused and said the tax on the whole lot would have to be paid, as they could not divide it.

When Mr. Korb started taking down the fence after he got a deed to Lot 200, the plaintiff protested that the fence belonged to her. She said there had always been a passageway between the garage or shed (on Lot 200) and her house and there was a gate, which opened into the rear of plaintiff's lot. Plaintiff protested when Mr. Korb tore down the gate. She said there had been a walk along the south side of her house ever since the house was built. (She had lived in the house since 1920.) This walk was located on the rear of Lot 200, since the walk passed south of that part of plaintiff's house which extended about two feet over the north line of Lot 200. Mr. Korb claimed the land up to plaintiff's house, put up cords and fastened them to nails in her house and shut plaintiff off from the path on the south side of her house. She objected to Mr. Korb's action. There was evidence that plaintiff had planted some flowers on the terrace at the rear of the corner lot, but plaintiff said she did so with the permission of the then owner, Mrs. Maris. There were no weeds, bottles, brush or garbage on the rear of Lot 200, when

plaintiff had it; that, if any were there, that was after Mr. Korb tore down the fence and took charge of it. Plaintiff had never made claim to any part of the corner lot owned by Mrs. Maris and, since 1949, by Mrs. Davis.

Plaintiff further testified that on one occasion Miss Griffith took her down to Omar Robinson, a lawyer, and Miss Griffith told him what she was doing, that is, she (Miss Griffith) was giving plaintiff the rear portion of her lot. There was no direct testimony that a deed was in fact made and delivered, however, plaintiff testified that she had made diligent search for the deed and that she had been unable to find it. Even after "that occasion" Miss Griffith still refused to let plaintiff pay the taxes on the rear portion of the lot. Appellants' statement of facts in appellants' brief in effect concedes that there was evidence from which the execution of a deed could be inferred and that the deed was lost and not recorded. We find no competent evidence that a deed was in fact executed and delivered.

Defendant Korb, a witness for defendants testified that, when he talked to plaintiff about the encroachment of her house on the lot which he had purchased, he "was informed that the property on the north side of this fence belonged to her, that it was hers and had been given to her.".

There was other testimony by Louise Ennis that, about the year 1938, there was a woven wire fence with iron posts, located about twenty-five feet south of plaintiff's house. There were no openings in or through the fence from the Linwood side and there was a walk along the south side of plaintiff's house that gave access to go around to plaintiff's back porch and to the back of plaintiff's lot. The fence was south of the walk. Plaintiff always kept the area between her house and this fence mowed and she had flowers and shrubs planted in that area. "It always looked very nice." It was kept in an orderly fashion and the shrubs were kept trimmed, until the fence

was removed about 1957. The fence had been up somewhere in the neighborhood of nineteen or twenty years. The fence "fenced Essie's back yard off from the other house entirely." If there was a door from the shed into the disputed area, she never saw it opened or used. Both plaintiff and her sister Emma worked out in the yard. Emma died in 1948 and plaintiff was subsequently disabled. Plaintiff told the witness that "the lady who owned the property had deeded the property to her." On cross-examination the witness quoted plaintiff as having said "that the lady had deeded her the property at one time so she could have the use of it."

Hugh Ennis, Secretary and Treasurer of the Ennis Paint Company and still active at ninety years of age, had been familiar with plaintiff's property for about thirty years. He said the back of the lot at 1904 Linwood adjoined the south side of plaintiff's property and that the east-west fence was of heavy woven wire and was located twenty-five to thirty feet south of the rear (north line) of the Griffith lot. To his knowledge the fence had been there ten to twenty years, with no opening through it. He had seen his sister working in the disputed area many, many times over the years since 1938. She mowed the grass, planted flowers along the fence and set out roses and shrubbery. Miss Jessie L. Griffith who owned the Linwood property died in 1954. She was a close personal friend of his sister Essie, the plaintiff. He said that he had seen Miss Griffith's dog in her own back yard and had had a conversation with Miss Griffith and that the fence was not intended "exclusively" to keep the dog in her back yard, "It was to mark the line of Miss Griffith's property that she was holding to herself." At one time the Ennis sisters, Essie and Emma, deeded their residence property to witness and he had deeded it back to them as joint tenants, but the deeds did not describe any part of Lot 200. Plaintiff had also executed some deeds of trust on her residence property, but she did not

include as security any part of the disputed area in Lot 200.

Defendant Davis testified that she acquired the corner lot on January 8, 1949; that she purchased the adjoining lot (1904 Linwood) from the Korbs; and that she was claiming the entire lot, Lot 200, under her deed. She had observed the property since 1949. After Miss Griffith became ill, it didn't seem that anyone was taking care of the property. There were a lot of weeds in the back yard. The disputed area had some kind of flowers and weeds. She "never saw anybody back there. * * * It was badly cared for. There hadn't been anybody caring for it or doing anything about it."

Defendant Korb said the shed or garage had two doors on the west side that opened into the disputed area. He said the fence had had two or three coats of paint, but the top rail was "slagging" and "the bottom wires were entirely rusted out in spots." In the disputed area he said there were "several large limbs that were decayed, brickbats, garbage, can lids, whiskey and wine bottles, cosmetic bottles, cans of all descriptions, large and small ones, and considerable amount of glass and limbs and weeds and no perception of flowers outside of the flowering trees, * * * Rose of Sharon, and some tiger lillies, which normally grow in profusion in places like that anyway." He moved the fence and hauled off the rubbish.

When Mr. Korb talked to plaintiff the second time after he purchased the 1904 Linwood property, he asked plaintiff to give him something concrete on her assertion that she owned the disputed tract, but that all she knew was that she owned it, and she gave him no "concrete evidence" "outside of her words that she owned that particular plot of ground."

Appellants concede that the evidence offered by the defendants "chiefly concerns matters that occurred after 1956"; and that "their evidence disclosed only that all of Lot 200 was run down and in need of repair."

In this jury-waived case we review the record de novo upon both the law and the evidence, as in suits of an equitable nature, but the judgment will not be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses. Supreme Court Rule 73.01(d), V.A.M.R.; Sec. 510.310, subd. 4 RSMo 1959, V.A.M.S. It is apparent that the cause turns upon the credibility, weight and value of plaintiff's evidence and its sufficiency to sustain the judgment.

In the trial of the cause much evidence was objected to on the ground of the Dead Man's Statute, Sec. 491.010 RSMo 1959, V.A.M.S., however, on this appeal there are no assignments of error as to the admission of evidence and the only assignments deal with the sufficiency of the evidence to support the judgment. In the original brief appellants did not attempt to separate the competent from the incompetent evidence or to point to any evidence that should be excluded from consideration upon this appeal. The cause was submitted here upon the assignments mentioned and the evidence admitted by the trial court. Only in their reply brief do appellants argue that plaintiff is relying on hearsay evidence admitted over objection.

As stated, appellants' first contention is that plaintiff's possession, if any, of the disputed area was permissive and not adverse. Appellants argue that the evidence conclusively demonstrates that "the plaintiff enjoyed whatever possession she had by permission and consent of the record title holder, Jessie Griffith." Appellants insist that there was no evidence from which an inference could be drawn that plaintiff's possession was adverse or hostile to the claim of the record owner and, since plaintiff's possession was permissive in its inception, it remained permissive and not adverse and that plaintiff could not obtain title on the theory of adverse possession. Appellants rely particularly on certain testimony of plaintiff's brother which was ad-

mitted over the defendants' objection that the question called for speculation and hearsay evidence. The question concerned whether plaintiff claimed the disputed area. Plaintiff's brother testified: "Yes, she said to me that she was claiming that. In other words, to begin with she said that Mrs. Griffith had promised her that tract of property. She was looking after it and said she could keep it in her name until she died, and—but she said, 'I am going to make provision to see the property is deeded to you after I am gone.'"

■ Appellants now say "there was no other competent evidence as to the nature of the possession." While the testimony mentioned tends to conflict with plaintiff's testimony and tends to impeach and weaken the testimony given by plaintiff at the trial, nevertheless it is clear that the trial court accepted and believed plaintiff's testimony and other testimony offered and disregarded the part of this testimony tending to show a permissive possession. A plaintiff is not conclusively bound by the adverse testimony of his witness unless such testimony is the only evidence before the court on the particular issue. Roberts v. Emerson Elec. Mfg. Co., Mo.Sup., 338 S.W.2d 62, 67; Smithers v. Barker, 341 Mo. 1017, 111 S.W. 2d 47, 50. In this case there were other facts and circumstances in evidence from which the court could and did draw a contrary inference.

■ Plaintiff, of course, had the burden of establishing each and every element required to gain title by adverse possession, which elements are: (1) the possession must be hostile, that is, under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous. State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W. 2d 174, 176; Krumm v. Streiler, Mo.Sup., 313 S.W.2d 680, 686; Grimes v. Armstrong, Mo.Sup., 304 S.W.2d 793, 799. And see Sec. 516.010 RSMo 1959, V.A.M.S. "Adverse possession", as hereinbefore referred to, for the statutory period not only creates a bar, but confers title to real estate. Loss-

ing v. Shull, 351 Mo. 342, 173 S.W.2d 1, 6 (6, 7). If plaintiff offered competent evidence to support each of the elements mentioned, it could hardly be said that the judgment of the trial court was clearly erroneous when due deference is given to the opportunity of the trial court to judge of the credibility of the witnesses. Defendants offered no evidence covering the period from 1938–1949.

Was plaintiff's possession, if any, permissive in its inception and never adverse? The evidence shows that a part of plaintiff's house rested on Lot 200 and plaintiff had a walk way along the south side of plaintiff's house beyond the encroachment and that plaintiff was in possession of a part of Lot 200, before plaintiff learned of the encroachment. The record shows that she never surrendered this possession, but that after the fence was built across Lot 200 from the southwest corner of the garage to the west side, separating the front from the back portion of Lot 200, plaintiff occupied and used the entire area between the fence and her house under a claim of ownership. She had physical possession (actual occupancy) and use of the property under a claim of right. In the case of State ex rel. Edie v. Shain, supra, 152 S.W.2d 174, 176–177, it was pointed out that "If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs." And see Krumm v. Streiler, supra, 313 S.W. 2d 680, 686; Agers v. Reynolds, Mo.Sup., 306 S.W.2d 506, 511(4).

Appellants cite Krumm v. Streiler, supra; Grimes v. Armstrong, supra, Dalton v. Willis, 360 Mo. 329, 228 S.W.2d 709; and Williams v. Diederich, 359 Mo. 683, 223 S. W.2d 402. These cases do not control under the facts shown by this record.

We think the record clearly shows that plaintiff's claim of ownership was unconditional and hostile. The record fully supports the trial court's finding of occupation and use under a claim of right. We must and do hold that plaintiff's possession was not permissive in its inception. Consolidated Dist. No. 4 of Jackson County v. Glandon, 363 Mo. 1, 5, 247 S.W.2d 770.

Was plaintiff's possession, if any, actual, open or notorious? We find the evidence entirely sufficient and convincing on this issue. Appellants insist that the basis of "plaintiff's claim was that she had planted foliage and flowers on the disputed tract" and that that sort of use cannot support a genuine claim of title. Appellants overlook the fact that the disputed area in this case was an enclosed area, except the entranceway near the front of plaintiff's residence. The north side was enclosed by the presence of plaintiff's residence a part of which rested upon some two feet of Lot 200. The east side was enclosed by the gate into plaintiff's back yard and the north and west sides of the garage building located on Lot 200. The south side of the area was enclosed by the heavy wire fence, which fence had no opening through it, and this fence separated the disputed area from the remaining back yard of the property known as 1904 Linwood. The west side of the disputed area was enclosed by the presence of a garage building located in the northwest corner of the corner lot, which lot had been owned by defendant Davis since 1949. Unless one went around west of the fence and over the rough area, the only entrance to the disputed area was between the south side of plaintiff's house and the north wall of the garage on the northeast corner of the corner lot. Further, the walk from the front of plaintiff's house to her back yard was over this area and through the gate between the garage building on Lot 200 and plaintiff's house. The pictures in evidence of this area clearly show the stones or concrete slabs of this walk across the area. The occupancy and use of the walk under the facts shown, the mowing of the lawn of the disputed area, the tending of the roses and other flowers, the trimming of the shrubs and the painting of the wire fence (it was paint from the Ennis Paint Company) were acts tending to show "actual, open and notorious" possession by the plaintiff. The case of Eld v. Ellis, Mo.Sup., 235 S.W.2d 273, 275 relied upon by appellants, is easily distinguishable upon its facts. The case of Krumm v. Streiler, supra, also relied upon, is also distinguishable.

The record contains sufficient competent substantial evidence to support the trial court's finding in plaintiff's favor. Deferring as we must to the trial court's better opportunity to judge of the credibility of the witnesses, we think the judgment should be affirmed.

It is so ordered.

All concur.