**W. O. BARTON and Olive F. Barton, Husband and Wife, Respondents.**

v.

**Gayle M. PAULY, Appellant.**

**No. 48711.**

Supreme Court of Missouri,

Division No. 1.

Nov. 13, 1961.

Robert E. Coleberd, Hale, Coleberd, Kincaid & Waters, Liberty, for appellant.

Wm. Harrison Norton, Williams, Norton & Pollard, North Kansas City, for respondents.

HOLLINGSWORTH, Judge.

Plaintiffs, husband and wife, brought this action to quiet title to 3.65 acres of farm land in Clay County, Missouri. The pleadings of both parties are quite involved, but at trial the sole issue was that tried to a jury, to wit: whether plaintiffs had acquired title to said land by adverse possession. The jury found that issue in favor of plaintiffs. Defendant has appealed from the judgment rendered in conformity with the verdict on grounds (1) that no submissible case was made and that, therefore, defendant's motion for a directed verdict filed at the close of the case should have been sustained; and (2) error in the giving of plaintiffs' submission instruction No. 1.

Plaintiffs and defendant own adjoining farms, plaintiffs' farm lying north of defendant's farm. Plaintiffs acquired their farm by deed dated August 22, 1936, and recorded on August 25, 1936. Defendant acquired her farm by deed dated January 2, 1940, and recorded January 15, 1940. Her husband died in 1958. According to the descriptions of the real estate conveyed by each of these deeds, the south line of plaintiffs' farm and the north line of defendant's farm coincide and, therefore, comprise the record dividing line between their respective properties. The tract of 3.65 acres to which plaintiffs claim title by adverse possession lies immediately south of the dividing line as described in said deeds. It is a strip 12.1 feet wide at the eastern boundary common to both farms and 73.46 feet wide at the western boundary common to both farms. The southern boundary of this strip runs along an old established east-west fence that has been in existence for many years and was so considered and treated by the parties hereto as the east-west division fence between their farms until this dispute arose shortly prior to the institution of this suit on January 26, 1960.

In addition to the facts above stated, plaintiffs adduced, insofar as here material, the following evidence:

Fred Woods, a licensed surveyor with 20 years' experience, and who had made a survey of the land in question, which was placed in evidence, testified: He is a nephew of Cornelius Woods, who formerly owned the land prior to its partition. He has known the land for "around 50 years" and knows that the fence line constituting the south line of the 3.65 acre tract to which plaintiffs claimed title by adverse possession had been in its present location for about 40 years. He became acquainted with plaintiff W. O. Barton seven or eight years ago and knows that he farmed the land north of the fence so long as he thereafter continued to reside on the farm.

Mr. Barton, hereinafter, for convenience, sometimes referred to as though he were the sole plaintiff, testified: He has lived in Kansas City North for the past three years. Prior to that time he and his wife lived on the farm since they bought it in 1936. Prior to purchase, he went with Mr. Asher, one of the owners, to view the farm, at which time Mr. Asher showed him the boundaries and pointed out the fence to which he has claimed title since he purchased his farm as the dividing line between plaintiffs' farm and defendant's farm. Plaintiff thereupon purchased the farm believing and claiming that said fence line constituted the division line between said farms and never heard anything to the contrary until advised by Fred Woods several years ago. After purchase, plaintiff did general farming on all of the land north of the fence; raised and grazed cattle and hogs and planted and harvested corn and alfalfa. The division fence was old when plaintiff bought the farm and he thereafter repaired it many times. It had been built in 1923. In 1950 a new fence was built on the same location as the old one. Plaintiff built the west one half of that fence and Mr. and Mrs. Pauly, defendant herein, built the east half thereof. On cross-examination, plaintiff testified: He is not yet "sure" that the 3.65 acre tract is included in defendant's deed. He never told either Mr. or Mrs. Pauly that he claimed the strip; they did

not ask and he did not say he was claiming it "no more than the rest of the farm." He did not merely "suppose" the south fence was the boundary line; Mr. Asher told him it was.

Mrs. Lila Fann testified: She has lived near this land 67 years and knows that the fence was the division line between the north farm, once owned by her sister, and the south (defendant's) farm. She does not know whether the location of the fence has been changed. Cornelius Woods testified: He has lived in the neighborhood 65 years and had owned the Pauly farm from the time he was nine years old until he was 22 years old. The fence line has never been changed since 1923, "only just a new fence has been put in. * * * It might have varied just a few inches." Mrs. Cornelius Woods testified: The fence line was changed in 1923 but, insofar as she knows, it has remained in the same place since that time. Estil Smith testified: He is the Collector of Clay County. The farm owned by plaintiffs has been assessed since 1952 as containing 89.02 acres, according to the records sent in by the assessor; the records prior to that time have been destroyed. The taxes have been paid.

Defendant's evidence, insofar as here material, was as follows:

Mrs. Pauly testified: She bought the farm in January, 1940. The deed calls for 61 acres. She (with her husband during his lifetime) has been in continuous possession and actual occupancy of the farm since she bought it. In June or July, 1950, they and Mr. Barton discussed the fence here in question. He told them their livestock was getting out and suggested the repair or rebuilding of it. He also told them that, facing north toward plaintiffs' farm, the right (east) side of the fence was theirs and the left (west) side was his to repair. In June and July of 1950, plaintiffs and the Paulys joined in building a new fence on the line of the old fence in the manner suggested by Mr. Barton. When the fence was discussed and built, there was no "conversation" in regard to its being the dividing line; only

its construction and the necessity of keeping the livestock out was discussed. Nothing was ever said to either Mr. Pauly or defendant that plaintiffs were claiming to the fence. She first learned of that claim in July, 1959, shortly prior to the filing of this suit. When defendant bought the land in 1940 and when the fence was rebuilt in 1950, they "supposed that [the fence] was the line." Defendant and her husband have paid the taxes on the property described in their deed ever since 1940. On cross-examination, defendant testified: Her deed calls for 61 acres. She has had a survey made since this dispute developed. From that survey she has learned that there are 61 acres of land between the fence on the south side of her farm and the fence in dispute between her and plaintiffs; and that if the 3.65 acre tract in dispute is included in her farm, she would be possessed of 64.65 acres. Before she bought the farm, she and her husband first went out to look at it. They "supposed" the old fence (since rebuilt by the parties hereto) on the north side was the north property line of the farm. She admits that plaintiffs have farmed and grazed their livestock up to the fence line in dispute ever since defendant acquired the farm in 1940.

In support of her contention that plaintiffs made no submissible case of title to the 3.65 acre tract by adverse possession, defendant cites some eleven cases, typical of which are: Bell v. Barrett, Mo., 76 S.W.2d 394, 396; Horton v. Gentry, 357 Mo. 694, 210 S.W.2d 72, 75; Grimes v. Armstrong, Mo., 304 S.W.2d 793, 799; Krumm v. Streiler, Mo., 313 S.W.2d 680, 686; Conran v. Girvin, Mo., 341 S.W.2d 75, 90; Carlisle v. Keeling, Mo., 347 S.W.2d 191, 194. We have no complaint with the law announced in any of them. All of them declare that title by adverse possession is to be adjudged only when each and every element of adverse possession, to wit: the possession must be (1) hostile, that is, under claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, is clearly shown by substantial evidence to have

existed for the statutory period of ten years. Section 516.010 RSMo 1959, V.A.M.S.

■ As we view the evidence, the admissions made by defendant established beyond question that plaintiffs' possession of the strip of 3.65 acres lying south of the the true line between the farms and north of the fence enclosing the south side of that strip has been actual, open and notorious, exclusive and continuous from January 2, 1940, the date on which defendant acquired title to her farm. Prior to that date both Mr. and Mrs. Pauly saw that fence and "supposed" that it was the division line between their farm and the farm on the north. Necessarily, they thereby understood that the land to the north of that fence was not in their possession but was possessed by the owners of the farm on the north. From that date henceforth, defendant has resided on the farm and necessarily saw as often as she looked, as could any one, that plaintiffs were in actual, open and notorious, exclusive and continuous possession of the land north of the fence and were actually and physically operating it as their farm. Consequently, there can be no valid contention that plaintiffs' possession during those years was anything less than actual, open and notorious, exclusive and continuous. But, says defendant, there has been no clear showing that plaintiffs' "claim to the property in question was hostile; that is, an intention to claim to the fence, regardless of the record title." She bases that assertion upon Mr. Barton's testimony that plaintiffs never told anyone that they claimed to the fence and her contention that she never knew that plaintiffs so claimed until she received a letter from plaintiffs' counsel, shortly prior to the filing of this suit, advising her that plaintiffs asserted title to the fence, and that when the fence was rebuilt in 1950 both parties merely "supposed" the fence was their division line.

■ Therefore, the sole question of the submissibility of the issue of adverse possession is: Was plaintiffs' possession of the 3.65 acre tract hostile, that is, was it

their "intention to claim to the fence, regardless of the record title"? Mere possession alone for the statutory period is not sufficient to support acquisition of title by adverse possession. "There must be an unequivocal claim of ownership to make the possession adverse. * * * In determining the character of the possession, the important factor is, not whether the true line is known or whether there is a mistake as to the boundary, * * * it is the intent with which the boundary fence is built and the unequivocal character of the claim made thereafter, which is decisive of the question." Bell v. Barrett, Mo., 76 S.W.2d 394, 396. This court has many times reaffirmed the holding in State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176: "The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. * * * One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership." See also Agers v. Reynolds, Mo., 306 S.W. 2d 506, 511–512; Mooney v. Canter, Mo., 311 S.W.2d 1, 5; Krumm v. Streiler, Mo., 313 S.W.2d 680, 686; Grimes v. Armstrong, Mo., 304 S.W.2d 793, 799; Ennis v. Korb, Mo., 347 S.W.2d 671, 676.

◼ The old fence admittedly stood as the only physical division line between these separately owned and separately operated farms from the time Mrs. Pauly acquired her deed in 1940 until 1950. At that time, following complaint of Mr. Barton that the Paulys' livestock ·was getting through that fence onto plaintiffs' farm, the parties, in the manner commonly employed by farmers in defraying the cost of construction and maintenance of division fences, constructed a new fence along the line of the old one. True, defendant says that she acquiesced in that procedure, not because she thought plaintiffs claimed to own the land up to that fence, but solely because of the necessity of keeping defendant's livestock away from plaintiffs' farming operations. We think, however, a jury would be warranted in finding that the new fence was built on the line of the old one because the Paulys knew that both they and plaintiffs had been in possession of their respective farms from 1940 under unconditional claim of ownership to the fence line dividing them, and that, in recognition of those claims, they, in 1950, agreeably joined in building the new fence, and no suggestion is made that there was any change in the nature and extent of the possession or claim of ownership of either of the parties from the time the fence was built until shortly before this suit was brought in 1960. Clearly, the evidence warranted submission of the issue of the "hostility" of plaintiffs' possession.

◼ Defendant next contends that plaintiffs were not entitled to submission of their case because they filed no responsive pleading to the counterclaim filed by her 'and that she was therefore entitled to a judgment as therein prayed, which, if rendered, would have barred submission of plaintiffs' claim of title by adverse possession. Plaintiffs' petition (among many other things not here material) pleaded title by adverse possession to the 3.65 acre strip in question and further alleged that defendant's deed was erroneous in including within its description of the land conveyed to her the strip in question. The prayer was for a decree correcting defendant's deed and adjudging plaintiffs to be the owners of the 3.65 acres in question. Defendant's answer denied plaintiffs' claim of title to the 3.65 acre tract by adverse possession and, by way of counterclaim, defendant asserted not only record title to the 61 acres of land described

in her deed but averred title to the whole of her farm by adverse possession and prayed adjudication of title to the whole thereof in her. When the case came on for trial, however, each of the parties had obtained a survey and both knew that the only question for trial was that of plaintiffs' claim of title to the 3.65 acre strip by adverse possession and the case was tried solely upon that issue. No other submission was sought by either of them. Defendant made no complaint of plaintiffs' failure to plead to the counterclaim until just before the close of all of the evidence. After the close thereof, defendant moved for a directed verdict, the seventh ground of which reads as follows: "The allegations of defendant's counterclaim are admitted by plaintiffs because of the failure of plaintiffs to file a reply or responsive pleading to same." Actually, it would seem that defendant's counterclaim had no place under the only issue tried or submitted. But, in any event, defendant waived whatever rights she had by going to trial on the issue submitted as though a reply had been filed. Walker v. Huddleston, Mo.App., 261 S.W.2d 502, 505; Pleiman v. Belew, 360 Mo. 219, 227 S.W.2d 733, 735.

■ Defendant also contends that Instruction No. 1 given in behalf of plaintiffs was prejudicial in that it assumed and advised the jury as a fact that the fence line constituting the southern boundary line of the 3.65 acre tract *had been a known property line for more than 31 years.* The instruction does assume that to be the fact. The opening paragraph of the instruction reads:

"The Court instructs the jury that if you find and believe from the credible evidence that plaintiffs W. O. Barton and Olive Barton, were in possession, since August 22, 1936, of the following described property in Clay County, Missouri, being the premises in controversy, to-wit:

"Beginning at a point 1003.86 feet South of the Northwest corner of the East ½ of the Northwest fractional ¼ of Section 3–52–33 in Clay County, Missouri; thence East 3723.18 feet to a point in the Westerly right-of-way line of Route U.S. 169; thence South along said right-of-way line 12 feet to a point, said point being in a fence line *which has been a known property line for more than 31 years*; thence West along said fence line 3723.18 Feet to a point; thence North along a fence line, said fence line having been established as a property line for more than 31 years, 73.46 feet to the point of beginning;"

following which, said instruction hypothesizes a finding of facts in accordance with the evidence tending to establish plaintiffs' claim of ownership and directs a verdict in their behalf if the jury so finds the facts to be. (Italics supplied.)

The undisputed evidence shows that the fence line here involved had been in existence for more than 31 years and had constituted the only partition fence between the farms involved and that both parties believed such line to be the true division line between their farms. But that fact does not solve the question. The only live issue in the case was whether that fence line, by virtue of adverse possession by plaintiffs of the 3.65 acre strip lying north thereof, had become the property line between plaintiffs' and defendant's farms. For the trial court to assume and state in an instruction given the jury that the fence line along which the south line of the 3.65 acre tract coursed "has been a *known property line* for more than 31 years" was to say to the jury, in effect, that the fence line had been the *known property line* between these farms during that period, because, obviously, it could not have been a known property line between any other properties during those years. If the jury accepted that statement as a fact, as we must assume it did in the absence of fact or circumstance reasonably to indicate it did not, defendant's sole defense was materially prejudiced at the beginning of the jury's deliberation. This for the reason that if

the fence line between the farms "has been a known property line" between these farms during those years, there was little, if any, issue for the jury to pass upon.

Other objections are leveled against the instruction but, inasmuch as it necessarily will be redrafted in the event of a new trial, the parties and the court may consider the necessity of any further rewording thereof in the light of the views expressed in this opinion and the evidence adduced at such trial.

The judgment is reversed and the cause remanded.

All concur.