**John F. HEDGPETH, Respondent,**

v.

**B. J. MADDUX and Nadine Maddux, Appellants.**

No. 49437.

Supreme Court of Missouri,

Division No. 1.

March 11, 1963.

Rehearing Denied April 8, 1963.

Theo. G. Scott, Buffalo, Clarence O. Woolsey, Robert C. Fields, Allen, Woolsey & Fisher, Springfield, for appellants.

Bill Davenport, Ozark, Sam Appleby, Ozark, for respondent.

HYDE, Judge.

Plaintiff's action was for ejectment and damages. Defendants claimed title by ad-

verse possession, asked for determination of title and to be decreed the owners. The court found against defendants' claim and ordered that plaintiff should recover possession with damages. Defendants have appealed.

Defendants had been in possession less than three years when this suit was commenced so that their claim of title by adverse possession depended upon the claims and possession of their predecessors in title. The court found that "defendants have wholly failed to sustain the burden of proof on the defense of adverse possession" because "defendants' predecessors in title, who have owned the land within the last ten years, testified they were making no claim to any land not owned by them or to any definite landmark."

The land involved is in the City of Ozark in Fractional Block 6 of the new town of Ozark and in Block A of Robertson's Addition which adjoins Fractional Block 6 on the west (with no street or alley between) being on the south side of North Street (an east and west street) and on the west side of Spring Street (a north and south street) which was State Highway 65. Defendants' deed of December 17, 1957, conveyed to them Lot 1 of Fractional Block 6 (being the northern lot of the three lots in that Block, each 64 feet long north and south) and Lot 5 of Block A, except the south 17½ feet thereof. (There were two lots on the east side of Block A each 96 feet long north and south.) Plaintiff's deed of August 2, 1944, had conveyed to him all the rest of Fractional Block 6, being all of Lots 2 and 3, all of Lot 6 of Block A, and the south 17½ feet of Lot 5, Block A.

Thus the land conveyed to defendants is directly north of the land conveyed to plaintiffs and only came south from North Street 64 feet along the Highway (the length of Lot 1, Block 6) and 78½ feet in Lot 5, Block A adjoining (96 less 17½) so it is the north part of the land described in plaintiff's deed that is in dispute. The court found this was the north 26 feet of Lot 2 of Frac-tional Block 6 and the north 8½ feet of the south 17½ feet of Lot 5 of Block A. However, according to defendants' answer, they were claiming still more land (and so state in their brief) being not only 90 feet south along the Highway which included the north 26 feet of Lot 2, Block 6 (conveyed to plaintiff) but also 105 feet south from North Street in Block A (west of Block 6) which would take all of Lot 5 and the north nine feet of Lot 6, Block A. Defendants had a survey which covered this area (105 feet south in Block A and 90 feet south in Block 6) which their surveyor said covered all the area believed to have been used by defendants' grantor Ashley Vaughn. This covered Lot 1 and the north 26 feet of Lot 2 of Block 6 (90 feet north and south), then on the west went 15 feet farther south taking all of Lot 5 (96 feet) and the north 9 feet of Lot 6, Block A (105 feet north and south). The description in defendants' deed was not considered in making this survey.

Defendants' claim of title by adverse possession thus depends on the testimony of Vaughn, who got title in 1948 from his mother, who had acquired it in 1944. Vaughn moved to Kansas City in 1955 and sold to defendants through a realtor. There was a two-room house on the land when the Vaughns got it, which was used as a grocery store. Plaintiff's survey showed the south wall of this building was 21 feet north of corner marked by plaintiff's surveyor as the northeast corner of the south 17½ feet of Lot 5, Block A, described in plaintiff's deed and was 6 feet north of the north line of Lot 2 of Block 6, so it did not encroach on the land described in plaintiff's deed. However, Vaughn built a small building south of the store building (said to have been attached to it) described as a "lean-to" used as a cafe or hamburger shop and rented for a fruit stand when Vaughn went to Kansas City. Vaughn said this small building was about 16 by 12 feet and that its south end was approximately 23 or 24 feet south of the main building so it did encroach on the land described in plaintiff's

deed, although not as far as he estimated according to plaintiff's survey. (This small building was removed by defendants.) Vaughn also said that at the time his mother got the land there was an old picket fence about two feet south of the small building. This fence was north of a maple tree, the stump of which (it was cut down by defendants) was located by plaintiff's survey as being only 15 feet south of the south line of Lot 1 of Block 6, at the northeast corner of the south 17½ feet of Lot 5, Block A, described in plaintiff's deed. Vaughn thought the picket fence was the line between his land and plaintiff's land. The fence fell down while Vaughn owned the land and he removed it. The picket fence did not go all the way through to the west line and how much of it was on Lot 5, Block A, was not definitely shown.

According to plaintiff's survey, the line of the picket fence would be the north line of the south 17½ feet of Lot 5, Block A, which would have made the line of the picket fence through Lot 5 conform to the description in plaintiff's deed. As to the part below this line in Lots 5 and 6 of Block A, now claimed by defendants, Vaughn testified: "Q And did you also claim the offset to the west of it, being 15 feet diverted to the south, did you claim that to be your land? A I claimed it. But I made no object to get possession of it, because I didn't need it. And the only way we ever used it, my wife, and a lady by the name of Mrs. Stice, put a little garden in it. * * Q I say, regardless of where the picket fence was, you were claiming beyond it, back where the jog was, the fifteen foot jog to the south. A I never did ask possession of it. I didn't need it. But I claimed everything that was on that abstract." He said the use as a garden was only for one year about 1948. There was evidence that brush grew up on this land and that apple crates and other debris were thrown on it by Vaughn's tenants.

■ Since this case was tried by the court, we review the record de novo upon both the law and evidence, as in suits of an equitable nature, and may make our own findings of fact; but the judgment will not be set aside unless clearly erroneous and due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. Supreme Court Rule 73.01 (d), V.A.M.R. Ennis v. Korb, Mo., 347 S.W.2d 671, 675; Townsley v. Thielecke, Mo., 349 S.W.2d 902, 906.

■ Vaughn did say that he and his mother both claimed to the picket fence. He also said he claimed all that his deed called for and that he never told plaintiff that he was claiming any other land than his deed called for. However, he did have possession of the land in Lot 1, Block 6, to the picket fence and used it by building the small building on it. Plaintiff also seems to have considered the picket fence to mark the line between his land and the Vaughns. Controlling principles were stated in State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176, as follows: "The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. It involves two things: A present or, in the case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control. Or, in the language sometimes used in the cases, to exercise dominion over the object possessed. One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership." See later cases of Agers v. Reynolds, Mo., 306 S.W.2d 506, 511; Barton v. Pauly, Mo.,

350 S.W.2d 748, 752, and cases cited. Applying these principles, and finding plaintiff's survey to correctly locate the line of the picket fence from the location of the tree stump, which Vaughn's testimony shows was on the south side of the fence, our conclusion is that the evidence shows title by adverse possession in defendants of the north 15 feet of Lot 2, Block 6, only. Thus, we also find that defendants have not sustained their burden of proof to show title by adverse possession to any of the land in Block A (either in Lot 5 or Lot 6) described in plaintiff's deed and we hold that they have no title to any land in Block A not described in their deed.

The judgment is reversed and cause remanded with directions to decree title in defendants to the north 15 feet of Lot 2, Fractional Block 6, and to adjudge that plaintiff recover possession of all of the rest of the property involved with damages as heretofore awarded.

All concur.