Lawrence BOECKMANN and Emma A. Boeckmann, Appellants,

v.

Thomas A. FITZPATRICK et al., Respondents.

No. 56887.

Supreme Court of Missouri, Division No. 2.

March 12, 1973.

David Brydon, Graham & Hawkins, Alex Bartlett, Hendren & Andrae, Jefferson City, for plaintiffs-appellants.

Nicholas M. Monaco, Carson, Inglish, Monaco & Coil, Jefferson City, for defendants-respondents.

HOUSER, Commissioner.

Suit to quiet title, in conventional form, by Lawrence and Emma Boeckmann against Thomas and Hermina Fitzpatrick. Defendants filed a general denial and counterclaim to quiet title. The trial court found that the Fitzpatricks are fee simple owners and that the Boeckmanns have no interest in the land. The Boeckmanns appealed to this Court on May 4, 1971, hence this Court has jurisdiction under Art. V, §§ 3, 31, Constitution of Missouri as amended, V.A.M.S.

The land in question is approximately 11 acres, described in the pleadings as all that part of NW¼ SE¼ Sec. 23, Twp. 43, Rg. 12 "that lies south of the Rock Creek Road." The common source of title is George and Amelia Popp, who acquired the above described quarter quarter section together with other adjacent lands in 1935. This land, together with adjoining lands north of the road, totaling approximately 90 acres, was conveyed by the Popps to the Wachters in 1938; by the Wachters to the Laufs in 1941, and by the Laufs to the defendants Fitzpatrick in 1955.

George Popp died in 1940. In 1942 his widow Amelia undertook to convey the 11 acres in question, together with other lands, to the Phelps, who deeded to the Siebenecks in 1944, who in turn deeded to the plaintiffs Boeckmann in 1962.

All of these deeds were promptly recorded in the office of the Recorder of Deeds following their execution.

When Wachter bought the 90 acres in 1938 the road was understood to be the south boundary line; no ground on the other side of the road was "figured on." Popp was "extra strict" that Wachter "wouldn't get the land across the road," and Wachter did not intend to buy any land south of the road. Wachter intended to sell the same land he bought and not to sell Lauf anything south of the road. Wachter "plainly explained" to Lauf that the road was the south line. Lauf understood that he bought and owned everything north of the road. He testified that he had no land on the other side. Occasionally Lauf would hunt on the south side of the road but whenever he crossed the road for that purpose he would get permission from Siebeneck, "because I don't hunt on other people's ground without permission." When Lauf negotiated with defendant Fitz-

patrick for sale of the land the parties walked the boundary and Lauf pointed out the lines. Lauf pointed out to Fitzpatrick the Rock Creek Road as the south boundary. Lauf had a fence along the north side of the road and the parties walked inside that fence. Both parties understood that nothing south of the road was being sold. Lauf testified that he did not sell anything on the other side of the road; that he would not sell anything he did not own; that he did not own anything on the south side of the road and couldn't have sold anything over there; that he sold whatever was "in the deed" but that there was a mistake in the deed; that "if the deed went across the road, I didn't sell it to him"; that if he had known that land on the other side of the road was included in the deed he would have given it back to Wachter because Lauf did not want anything he did not own.

After Fitzpatrick received his deed in 1955 Siebeneck erected a fence along the south side of the road. Fitzpatrick made no effort to stop him. Fitzpatrick did not think it was his land and therefore let Siebeneck "go right ahead and fence it." Fitzpatrick testified that he would not try to claim something that was not his; that he now claims the 11 acres "according to [his] deed and abstract" and "not against anybody else"—"not adversely, just according to my deed." At different times Fitzpatrick would walk back and forth across the 11 acres in dispute, "hunting or something like that," but he never did any work on the 11 acres. Fitzpatrick did not use or possess the 11 acres at any time nor did he pasture, crop, fence or undertake to rent it. Fitzpatrick first made claim to the 11 acres in 1964, after an abstracter told Fitzpatrick that Boeckmann was trying to sell a part of Fitzpatrick's property. Fitzpatrick then told Boeckmann that the latter could not sell it because Fitzpatrick owned it and because it was under mortgage. In one breath Fitzpatrick testified that he has claimed the 11 acres since 1964 but in the next he admitted that in order to claim it

he would "have to go over the fence"; that the fence "boundaries [sic] the land, and he [Boeckmann] could stop me [Fitzpatrick] from going in there and claiming it."

Siebeneck bought the farm considering the road as the line. The land was rough and unfenced. About 1946 Siebeneck fenced the entire boundary line of the farm, using a 3-strand barbed wire on posts set 9 feet apart. He fenced the Rock Creek Road as the north boundary line. He did not erect the fence for the purpose of taking that land away from the Fitzpatricks if they owned it, but because he thought he owned the land. He claimed the land up to the road as his own because he had a deed to it. If the road was the true north boundary line he claimed the land as his own against anybody because it was in his deed and abstract. He used the land because he had a deed to it. Beginning in 1947 he put 20 head of cattle on the land, and continued to use the land for pasturing and feeding cattle as long as he was there, pasturing the cattle "right up to the road." He maintained the fences and used the land as his own from 1944 to 1962. During this period his title was never questioned. In 1962 the Siebenecks deeded a 5-foot strip on the south side of the road to the county for road-widening purposes.

When Boeckmann bought the Siebeneck farm in 1962 the Rock Creek Road was pointed out to him as the north boundary line of the property. Since the Boeckmanns moved onto the farm they have used the land for grass and pasture for their cattle. The cattle pastured over the entire area, including the area south of the Rock Creek Road. It has been fenced. Boeckmann claimed it as his own from 1962 to trial time. When a question arose between the parties as to the ownership of the 11 acres Boeckmann asked Fitzpatrick for a quitclaim deed, which request was declined on the ground that the land was included in a mortgage and that Fitzpatrick could not "give that away." Boeck-

mann claims the land south of the road as his own, having paid for it and having a deed to it, but he would not claim land he did not own and would not want to take it from Fitzpatrick if he did not own it.

Through the years both sets of owners have paid taxes on the 11 acres in dispute.

The circuit court properly ruled that plaintiffs' predecessors in title did not acquire legal title to the 11 acres in question for the reason that defendants' predecessors, the Wachters, acquired title in 1938 from the common source of title. There was no title remaining in Amelia Popp in 1942 when she purported to deed the same land to plaintiffs' predecessors, the Phelps. The circuit court clearly erred, however, in its ruling that defendants and their predecessors in title have been in peaceable possession of the land from 1938 to the present; that nothing of record shows that defendants have been divested of the land, and that the case could not be ruled on the basis of adverse possession for the reason that title by adverse possession had not been pleaded by either of the parties.

While defendants Fitzpatrick have record title (their predecessors having acquired same from the Popps and having recorded their deed prior to the execution of the deed by Amelia Popp to the Phelps) that legal title has been lost to plaintiffs and their predecessors in title by adverse possession. Although not raised by the pleadings the issue of adverse possession was tried by the implied consent of the parties and will be treated in all respects as if pleaded. Supreme Court Rule 55.54, V.A.M.R. The evidence clearly shows that title by adverse possession ripened in plaintiffs' predecessors in title, the Siebenecks, for the statutory period of time and that plaintiffs' title derived from the Siebenecks has not been divested. Neither defendants nor their predecessors in title, the Wachters and Laufs, ever possessed, intended to possess, claimed or intended to claim, the land. There is no question that plaintiffs' predecessors in ti-

tle, the Siebenecks, intended to possess and actually possessed, fenced, used and claimed the title to the land for eighteen years prior to plaintiffs' obtaining a deed from the Siebenecks. "If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. It involves two things: A present or, in the case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control. Or, in the language sometimes used in the cases, to exercise dominion over the object possessed. One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership." State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176, cited and quoted with approval in Hedgpeth v. Maddux, Mo.Sup., 366 S.W.2d 314, 316. The undisputed facts bring this case within the governing principles. The intent of Siebeneck to occupy and possess the land as his own up to a supposed line with an absolute claim of title thereto; possession under color of title and exercise of dominion over the land, is plainly shown by the deeds, inclosure, pasturage, paying taxes on the land and conveying a 5-foot strip of land to the county for road-widening purposes. Siebeneck is deemed to have held adversely notwithstanding his claim of title may have originated in a mistaken belief that the supposed line was the true line, because in his mind the boundary line was fixed. Mangold v. Phillips, Mo.Sup., 186 S.W. 988, 989.

The judgment is reversed and the cause remanded with directions to enter judg-

ment for plaintiffs and against defendants in accordance with the prayer of plaintiffs' petition.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.