**DEER RUN PROPERTY OWNERS ASSOCIATION, Respondent,**

v.

**Thomas B. BEDELL and Della R. Bedell, husband and wife; Jeff Featherston and Phyllis Featherston, husband and wife; Martha Gossett; Bill C. Williams and Virginia Williams, husband and wife; Southern Missouri Savings Bank; Marvin V. Francis and Debbie D. Francis, husband and wife; David C. Eckelmann and Marilyn M. Eckelmann, husband and wife; Claude Kennedy and Gertie Kennedy, husband and wife; C.P. Johnson; Gene Leuckel and Phyllis Leuckel, husband and wife; Charles B. Hampton; Joe L. Potts and Rose Marie Potts, husband and wife; Viandell Smith and Viandell Smith Trust, Appellants.**

No. 23602.

Missouri Court of Appeals, Southern District, Division Two.

June 14, 2001.

Paul A. Kidwell, L. Joe Scott, Scott, Kidwell & Scott, Poplar Bluff, for Appellants.

John L. Oliver, Jr., Oliver, Oliver & Waltz, P.C., Cape Girardeau, for Respondent.

RAHMEYER, Judge.

■ Deer Run Property Owners Association ("Respondent"), as the agent of the successor trustee of Neil Land Development Company ("NLDC"),[1] brought an action for declaratory judgment against landowners of the Deer Run Subdivision ("Appellants") for past due land assessments. Respondent requested damages based on the past due assessments and interest thereon, and requested attorney fees. After the parties submitted countermotions for summary judgment, the trial court granted summary judgment for Respondent and awarded damages against Appellants as requested by Respondent. Appellants argue that the trial court erred in entering summary judgment for Respondent on the basis of estoppel.[2] We do not address Appellant's argument regarding the granting of summary judgment based on equitable estoppel because we find that the undisputed facts presented to the trial court support the trial court's judgment as a matter of law.

■ The review of the grant of summary judgment is *de novo*. *Ribaudo v. Bauer*, 982 S.W.2d 701, 703 (Mo.App. E.D. 1998). We need not defer to the trial court's order granting summary judgment. *ITT Commercial Finance Corp. v. Mid-America Marine Supply*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment is the same as the standard that should have been employed by the trial court to determine whether to sustain the motion. *Id.* The propriety of summary judgment is purely an issue of law founded on the record submitted to the trial court. *Id.* On appeal we review the record in the light most favorable to the party against whom summary judgment was entered.

---

1. NLDC is referred to in the record on appeal as both "Neil Land Development Company" and "Neil Land Development Company, Inc." For the sake of clarity, we will encompass both titles when we use "NLDC" in this opinion.

2. In their Reply Brief Appellants argue for the first time that there are genuine issues of material fact regarding whether Respondent had the authority to levy assessments. Arguments raised in Reply Briefs for the first time present nothing for appellate review. *Cain v. Buehner and Buehner*, 839 S.W.2d 695, n. 2 (Mo.App. S.D.1992). However, as these arguments were raised by Appellants in their response to Respondent's request for summary judgment, we address them as required by the standard of review.

*Reese v. Ryan's Family Steakhouses, Inc.,* 19 S.W.3d 749, 751 (Mo.App. S.D.2000). If the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the decision if it was appropriate under any theory. *Taryen Development, Inc. v. Phillips 66 Company,* 31 S.W.3d 95, 97–98 (Mo.App. E.D. 2000).

 "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT,* 854 S.W.2d at 380. Rule 74.04(c)(1) sets forth the requirements for motions for summary judgment:

> Motions for summary judgment shall state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts.

A genuine issue exists where the record contains competent materials that show "two plausible, but contradictory accounts of the essential facts." *ITT,* 854 S.W.2d at 382. Once a movant has met the burden imposed by Rule 74.04(c), the non-movant must show by affidavit or through other documents allowed by Rule 74 .04 that one or more of the material facts is, in fact, genuinely disputed. *Id.* at 381. Where the non-movant raises affirmative defenses, the movant seeking summary judgment must also show, beyond any genuine dispute, that the defenses are legally insufficient or the nonexistence of a fact essential to the defenses. *Id.* at 383. If the non-movant cannot contradict the showing of the movant, judgment is properly entered against the non-movant because the movant has already established a right to judgment as a matter of law. *Id.*

Appellants and Respondent filed a statement of stipulated and disputed facts. The stipulated facts, along with the Respondent's motion for summary judgment and Appellants' answer to that motion, can be examined to determine if Respondent was entitled to summary judgment.

NLDC was the titled owner of all of the real estate in issue on July 29, 1971, the day of the recording of title to that land. On that same day the first of several restrictive covenants on that land was executed and recorded the next day. The restrictive covenants contain substantially identical language for each tract of land that is the subject of the litigation between these parties. That language is as follows:

> THIS INDENTURE, made and entered into the 29th day of July, 1971, by and between NEIL LAND DEVELOPMENT COMPANY, a Missouri Corporation, hereinafter referred to collectively as "Party of the First Part" or as "Grantor", and all building site owners, their heirs, assigns, or administrators, in Deer Run Subdivision, located in Carter County, Missouri, hereinafter referred to collectively as "Parties of the Second Part" or as "Trustees".

The original indenture, then, identifies "all building site owners" as "Trustees." No individuals were explicitly named as trustees in the restrictive covenant. On July 30, 1971, the NLDC Board of Directors named three trustees.

The restrictive covenant provides that the trustees "shall serve as such until the first annual meeting of the building site owners after all of the building sites in said development have been sold, residences erected thereon and occupied." The parties acknowledge that there still are unsold lots, as well as sold lots without residences. The restrictive covenant further states that if any trustee shall be unable to serve "because of death, incompetency, or for any other reason, the re-

maining or surviving trustees shall appoint a successor to serve until such time as all building sites are sold, residences are erected thereon and occupied." Successor trustees have been appointed by the remaining trustees several times since the inception of the restrictive covenants. The successor appointments were recorded in the minutes of the meetings of the trustees; however, those records were destroyed in a fire along with the records of the appointment of the original trustees.

The trustees were given broad powers. The restrictive covenant states:

> The Trustees in exercising the rights, powers and privileges granted to them, and in discharging the duties imposed upon them by the provisions of this Indenture, may from time to time enter into contracts, employ agents, servants and labor as they deem necessary. . . .

The trustees were granted authority to assess property owners to defray the costs incurred in providing for the development. The procedure in the restrictive covenants for making assessments has been followed. The stipulated facts recognize the portion of the restrictive covenants stating that past due assessments shall bear interest at eight percent per annum beginning thirty days after notice of the assessment. Also recognized is the provision in the restrictive covenants that if an attorney is employed to collect past due assessments the building site owner shall pay a reasonable attorney's fee, not to exceed fifty percent of the amount of the unpaid assessment. Appellants stipulated to receiving notice of the assessments, and to the particular amounts assessed against them. Using the above provision as their authority, the trustees used Deer Run Property Owners Association, a not-for-profit corporation formed by the three existing trustees, as their agent to collect assessments.

On appeal, Appellant challenges the authority of Respondent to make any assessments: "It was through the initial transfer of interest and authority that DRPOA, its trustees, and ultimately its Operations and Management Committee, claim authority over the common area of the subdivision, including the ability to assess land owners for the maintenance and upkeep of the same." The basis of Appellant's argument is that Respondent cannot prove its authority because of the statute of frauds and because Respondent did not comply with a condition precedent prior to making the assessments. Additionally, Appellant claims there is an issue of fact as to whether NLDC owned all of the land at the time of the indenture because the land may have been subject to loans or deeds of trust.

Initially, the question is whether the general denial of ownership by NLDC suffices to raise an issue of disputed fact. Appellant supplied no affidavits, answers to interrogatories, admissions, or deposition testimony to support its claim that the property was subject to a number of loans and deeds of trust. Appellants merely asserted in their answer to the motion for summary judgment, "Defendants deny it is undisputed it was the sole owner of the real estate involved this [sic] action. Specifically, upon information and belief, Defendants are of the position that said land was subject to a number of loans and Deeds of Trust." Appellants' response to Respondent's summary judgment motion must show a genuine dispute of fact. The general denial that it believed the land was subject to various loans and deeds of trust would not withstand a summary judgment motion.

Even, assuming arguendo, that the property was subject to deeds of trust and loans, as a matter of law Appellants cannot prevail. Appellants did not provide

any case law to support its contention that the holders of deeds of trust or mortgages have an ownership interest in the land. In determining whether summary judgment is proper, "[a] 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous. Where the 'genuine issues' raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper." *ITT*, 854 S.W.2d at 382.

█ The law is clear in Missouri:

"The nature of the title conveyed under a deed of trust was well set forth in *City of St. Louis v. Koch*, 156 S.W.2d 1, 5[3,4](Mo.App.1941): 'A deed of trust in the nature of a mortgage given on land to secure the payment of a debt is held to be "a lien and nothing more. * * * So viewed, it is neither an estate in land, nor a right to any beneficial interest therein. It is neither jus in re nor jus ad rem. It is merely the right to have the debt, if not otherwise paid, satisfied out of the land. The debt is the essence of the mortgage, the lien a mere incident that follows it as a shadow...." ' "
*R.L. Sweet Lumber Company v. E.L. Lane, Inc.*, 513 S.W.2d 365, 368 (Mo. banc 1974)(internal citations omitted). The existence of deeds of trust and mortgages against NLDC does not change a finding that NLDC was the sole owner of the property.

█ Appellants argue that the trustees have no authority to levy assessments because "said authority is subject to a condition precedent to the appointment of trustees, which condition precedent has not been met, to-wit the sale of all building sites and the construction of homes thereon." The language of the restrictive covenant must be given its plain meaning in the context of the covenant so as to give meaning to every word. *London v. Handicapped Facilities Board of St. Charles*

*County*, 637 S.W.2d 212, 215 (Mo.App. E.D.1982). At the time of the drafting of the restrictive covenant, the parties of the first part and the parties of the second part were one and the same. In other words, NLDC was also "all building site owners."

Appellants contend that there is no evidence that NLDC died, became incompetent, or failed or refused to perform its duties as trustee and, therefore, any attempt to appoint any other individual as a trustee must fail. There is no dispute that NLDC did appoint three successor trustees for convenience or that as time went on the initial trustees appointed by NLDC appointed successor trustees. There is no dispute that the successor trustees used Respondent as an agent to collect assessments as authorized by the covenant. The issue raised by Appellants is whether the initial trustees had the authority to appoint successor trustees or whether all the subsequent "building site owners" were the successor trustees by virtue of the initial covenant. The resolution of this question is a question of law. Appellants provide no question of fact in the resolution of this issue that warrants a trial.

NLDC's Board of Directors properly supplied the first set of trustees. Those trustees had the power to name successor trustees when one was needed for "any other reason." This power ends only when all the lots are sold and residences are erected. This has not yet happened. Appellants' argument assumes that NLDC could not appoint any successor trustees. They argue, "[I]t is ludicrous to suggest that NLDC could refuse to act as the sole trustee and then was a 'remaining trustee' for the purpose of appointment of successors." To accept this interpretation of the document would mean that there could never be a successor trustee. NLDC, as a corporation, would have to remain in exis-

tence until all of the lots were sold. The use of the plural, "trustees," would be surplusage, as would the provisions for the appointment of successor trustees. The language in the covenant concerning death and incompetency would be meaningless because the corporation could not die or become incompetent. In other words, the trust would fail. The plain meaning of the covenant is that NLDC was the grantor and the grantee of a trust and the trust document provided a means of appointing successor trustees "for any other reason." As such, the trustees now serving were appointed pursuant to the restrictive covenants.

 Similarly, the restrictive covenant granted the trustees the power to engage Deer Run Property Owners Association as their agent. Their utilization of that association does not defeat the validity of the assessments. The plain language of the restrictive covenants allows the trustees to employ agents as the trustees deem necessary. The procedure set forth in the restrictive covenant is not violated.

 Appellants further contend that any purported transfer of power violates the statute of frauds. Their basis for this argument is that there are no written documents evidencing a transfer of power. They claim this lack of written documentation violates the statute of frauds, and, therefore, any purported transfer of power is unenforceable. Appellants' argument has no legal foundation.

Appellants provide no authority for the proposition that the appointment of the successor trustee must be in writing, nor have they indicated that this is a case of first impression justifying a lack of authority. Further, they provide no authority for the proposition that the appointment of a successor trustee is a transfer of interest in real estate. We find no authority for this proposition.

The statue of frauds is found at § 432.010, RSMo.2000 (emphasis added):

*No action shall be brought* to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, or to charge any person upon any agreement made in consideration of marriage, or *upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year,* or upon any agreement that is not to be performed within one year from the making thereof, *unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized,* and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

The only portion of the statute that could possibly apply in this case is the italicized portion of the statute above. As explained previously, the appointment of the original and successor trustees has occurred as required by the original restrictive covenant, as have the assessments. The initial provision for the trustees and the assessments was in a properly recorded written document. Appellants have never contended otherwise. Rather, their argument is based on a false assumption that the original covenants do not allow successor trustees to be appointed until all land in the subdivision is sold and homes are built. The error of this argument is addressed above. The appointment of successor

trustees was "simply the exercise of a power provided" in the original restrictive covenants, and, therefore, the statute of frauds is not violated. *See Payne v. Grimes Real Estate Company*, 660 S.W.2d 755, 757 (Mo.App. E.D.1983).

Respondent established that the assessments were properly made in accordance with the restrictive covenants, that Appellants were landowners that had notice of the assessments, the amount of the assessments and interest, and that Appellant had not paid these amounts. Respondent established its right to judgment as a matter of law. The judgment is affirmed.

PREWITT and GARRISON, JJ., concur.