**Jimmy HEAROD, Jr. and Nikki Hearod, Plaintiffs– Respondents,**

v.

**Margie BAGGS, Defendant–Appellant.**

No. 26703.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 23, 2005.

Corey M. Swischer, Nevada, MO, for Appellant.

James V. Nichols, Lamar, MO, for Respondents.

JEFFREY W. BATES, Chief Judge.

Plaintiffs Jimmy and Nikki Hearod ("the Hearods") brought an ejectment action against defendant Margie Baggs ("Margie").[1] In Margie's answer, she asserted the affirmative defense of adverse possession. The Hearods filed a motion for summary judgment, which the trial court granted. Margie contends summary judgment was inappropriate because genuine issues of material fact exist that require a trial to resolve. We agree. The judgment of the trial court is reversed, and the case is remanded.

## I. Facts and Procedural History

In February 2004, the Hearods filed a petition for ejectment against Margie. The petition alleged that: (1) the Hearods were the fee simple owners of a tract of land identified by its legal description; (2) Margie resided in a mobile home located upon this real estate; (3) she had refused the Hearods' demand to remove the mobile home from the premises; and (4) the Hearods were sustaining $10.00 per day in damages due to Margie's unlawful possession of the real estate. In due course, Margie filed an answer admitting that she resided in a mobile home on the real estate. All other allegations in the petition were denied. The answer also contained a counterclaim alleging that Margie had acquired ownership by adverse possession of a lot, 100 feet by 75 feet in dimension, on which her mobile home was located.[2] Margie asked the trial court to enter a judgment quieting title to this lot to her.

In June 2004, the Hearods filed a motion for summary judgment. The motion alleged that the Hearods were entitled to summary judgment because "[t]here is no genuine issue of material fact in that [Margie] has admitted that her entry upon and use of the land was permissive; [Margie] has never paid real estate taxes on the property and [Margie] has affirmatively represented to the Barton County Assessor that she does not own the real estate." A five-paragraph statement of "uncontroverted material facts" was attached to the motion:

1. [Margie] placed her mobile home upon the real estate when Vernon Baggs and Rella Baggs, [Margie's] son and daughter in law, were owners of the property and with the knowledge and consent of Vernon and Rella Baggs. (See Deposition page 8, lines 17–25)

2. That [Margie] remained upon the real estate with the consent of the record owners until on or about October 13, 2003. (See Deposition page 11, lines 17–25)

1. Since other members of the Baggs family are involved in the relevant events, we refer to the defendant as "Margie." We refer to her son, Vernon Baggs, as "Vernon." We refer to Vernon's wife, Rella Baggs, as "Rella." We use these persons' given names for purposes of clarity; no disrespect is intended.

2. The tract of land described in the Hearods' petition was approximately 75 acres in size. The lot was located on this land, which the Hearods allegedly purchased from Rella.

3. That [Margie] has never paid the real estate taxes on the real estate. (See Deposition page 10, lines 5–10)
4. That [Margie's] assessment sheet submitted by [Margie] to the Barton County Assessor affirmatively states that [Margie] does not own or claim to own the real estate, but that Rella Baggs is the owner of the real estate. (See Deposition page 11 and Deposition Exhibit 1)
5. That [Margie] admitted in her deposition that she did not own the real estate. (See Deposition page 11, lines 6–7)

Copies of Margie's deposition and her deposition exhibits were attached to the Hearods' motion.

In Margie's response, she asserted that summary judgment could not be granted because there was a genuine issue of material fact as to whether the Hearods' predecessors in interest actually had title to the lot where Margie resided in her mobile home. The response included a list of the following "controverted material facts" upon which Margie relied in opposing the motion for summary judgment:

1. At the time [Margie] placed her trailer on the real estate in question, her son, Vernon Baggs, had led [Margie] to believe that he had purchased the real estate in question for [Margie] using proceeds from the sale of [Margie's] farm and real estate in Kansas. (See page 7 beginning at line 5 to line 16 on page 8).
2. Vernon Baggs led [Margie] to believe that he was renting the property in question from his Mother, [Margie], and that he in fact needed her permission to stay on the property. In lieu of monthly rent, there was an agreement that Vernon Baggs would pay all real estate tax-

es on the property. (See page 9, line 19 to line 25)[.]
3. [Margie] had no knowledge that any other person, excluding herself, had a claim of right to the title to the property in question until her son, Vernon Bagg's [sic] death, when her other children went to review the real estate records to determine whether their brother owned any real estate. Only then did [Margie] and her family learn that [Margie] did not have any ownership interest in the property in question according to the real estate records. (See page 15 line 2 to 24).

Margie's response was further supported by five affidavits obtained from members of her family. Margie's deposition testimony and the five affidavits established, for the purpose of opposing the motion for summary judgment, the facts set out below.

Margie's husband died in 1983. Upon his death, Margie became the sole owner of a farm in Barton County, Missouri ("Farm No. 1"). Her son, Vernon, lived in a trailer house on Farm No. 1 with his mother's permission. Margie was not sophisticated in real estate or business matters, and she relied on Vernon to handle such matters for her. In 1986, Margie decided she wanted to sell Farm No. 1 and move to Kansas. Vernon helped Margie sell the farm, and he kept the proceeds from the sale himself. The ostensible purpose for doing so was to keep the money in a lockbox in his home so it would be safe. Vernon then helped his mother purchase a farm in Reno County, Kansas ("Farm No. 2"), using the proceeds from the sale of Farm No. 1. Farm No. 2 had a house on it. Vernon moved into the house. Margie bought a mobile home and placed it on the property to use as her residence.

In 1987, Margie wanted to return to Barton County, Missouri. Farm No. 2 was sold, and the proceeds of the sale were used to purchase another farm in Barton County, Missouri ("Farm No. 3"). Vernon told Margie that she owned Farm No. 3. Margie agreed to let Vernon live in a house on Farm No. 3 if he would pay the real estate taxes on the house and land in lieu of rent. Margie would be responsible only for the personal property taxes and utilities for her trailer house, which she purchased and moved onto Farm No. 3 to use as her residence. Vernon told members of his family that "everything belonged to mom" and explained their arrangement concerning Vernon's obligation to pay the real estate taxes instead of rent. Pursuant to that arrangement, Vernon did pay the real estate taxes on Farm No. 3 each year when they were due. Margie paid her utilities and personal property taxes. Margie resided in her mobile home on Farm No. 3, in the belief that she owned the entire farm, for the next 13 years. She lived in the trailer alone, and she kept the surrounding lot mowed.

At some point not disclosed by the record, Vernon was mortally injured in a house fire. He died of his injuries on March 1, 2001. About one week before Vernon died, Margie attempted to transfer title of all property to which she had added Vernon's name back into Margie's name alone to avoid probate. The day before Vernon died, Margie discovered that Farm No. 3 had been titled in the names of Vernon and Rella. The farm had never been titled in Margie's name at any time.

After Vernon died, Margie continued to live in her mobile home on Farm No. 3. In October 2003, Rella's attorney sent Margie a notice that she had to vacate the premises within approximately 30 days because Farm No. 3 had been sold. Margie, who was 82 years old, refused to do so. In February 2004, the Hearods filed their ejectment action, which led to the trial court's disposition of the matter by summary judgment.[3] The trial court decided that "[Margie] as a matter of law cannot establish title by adverse possession in that [Margie's] entry upon and use of the property was permissive." This appeal followed.

## II. Standard of Review

In determining whether the trial court properly granted summary judgment, we employ a *de novo* standard of review. *City of Springfield v. Gee,* 149 S.W.3d 609, 612 (Mo.App.2004). Therefore, we do not defer to the trial court's order granting summary judgment. *Murphy v. Jackson Nat'l Life Ins. Co.,* 83 S.W.3d 663, 665 (Mo.App.2002). Instead, we use the same criteria the trial court should have employed in initially deciding whether to grant summary judgment. *Stormer v. Richfield Hospitality Services, Inc.,* 60 S.W.3d 10, 12 (Mo.App.2001). "The propriety of summary judgment is purely an issue of law." *ITT Commercial Finance Corp. v. Mid-Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.*

## III. Discussion and Decision

 Rule 74.04 distinguishes between motions for summary judgment filed by a

---

3. In August 2004, the trial court granted a partial summary judgment disposing of all issues except the Hearods' request for damages. In November 2004, the Hearods filed a voluntary dismissal of this aspect of their ejectment claim, which made the trial court's August judgment final for purposes of appeal.

"claimant" and by a "defending party." Rule 74.04(a), (b); *ITT*, 854 S.W.2d at 380.[4] In deciding a movant's entitlement to judgment as a matter of law, it makes a significant difference whether the movant is a claimant or a defending party. *ITT*, 854 S.W.2d at 381. A "claimant" is defined as "a party seeking to recover upon a claim...." Rule 74.04(a); *see ITT*, 854 S.W.2d at 380. Here, the Hearods were claimants because they were seeking to eject Margie from real estate the Hearods allegedly had a right to possess. Margie denied that the Hearods owned the property, and she also asserted the affirmative defense of adverse possession against them. Accordingly, the Hearods had to meet the following requirements in order to be entitled to judgment as a matter of law:

> A claimant must establish that there is no genuine dispute as to those material facts upon which the claimant would have had the burden of persuasion at trial. Additionally, where the defendant has raised affirmative defenses, the claimant's right to judgment depends as much on the non-viability of the affirmative defenses as it does on the viability of the claimant's claim. A claimant moving for summary judgment in the face of affirmative defenses must also establish that each affirmative defense fails as a matter of law. However, as to each defense, the claimant need only establish that any one of the facts necessary to support the defense cannot be established.

*Stormer*, 60 S.W.3d at 12 (citations omitted). The trial court erred in granting summary judgment because the Hearods failed to meet either of the foregoing requirements.

First, the Hearods' motion for summary judgment failed to establish as a matter of law that they were entitled to ejectment. A plaintiff is entitled to recover in an ejectment action by showing: (1) the defendant possessed the claimed premises at the commencement of the action; and (2) the plaintiff had the right of possession thereof. *Jansen v. Pobst*, 922 S.W.2d 43, 47–48 (Mo.App.1996); § 524.080.[5] A *prima facie* case for ejectment can be established—via admissions in the pleadings, interrogatories, an affidavit or other competent evidence—by showing: (1) proof of title in the plaintiff; and (2) defendant's retention of possession of said property under no valid right after a demand for surrender has been made. *See Gal v. Bishop*, 674 S.W.2d 680, 682–83 (Mo.App.1984). In this case, the Hearods alleged in their petition that they were the fee simple owners of the land where Margie's mobile home was located. She denied that allegation. The record before us contains nothing that proves the Hearods held title to the land upon which Margie's mobile home was located. Therefore, the Hearods failed to prove, as a matter of law, their right to possession of the real estate described in their petition.

Second, there is a genuine issue of material fact involving Margie's affirmative defense. In order for Margie to establish that she acquired title by adverse possession to the lot on which her mobile home was located, Margie had the burden of proving that her possession of the lot was: "(1) hostile, that is, under claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous, over the statutory period." *City of South Greenfield v. Cagle*, 591 S.W.2d 156, 159 (Mo.App.1979). The statutory period for ac-

---

**4.** All references to rules are to the Missouri Court Rules (2005).

**5.** All references to statutes are to RSMo (2000).

quiring title by adverse possession is 10 years. § 516.010. When the Hearods moved for summary judgment, they challenged only Margie's ability to prove the first element: hostile possession. The Hearods alleged that Margie's possession was permissive. In Margie's response, she asserted that there was a genuine factual dispute as to whether her possession of the lot was hostile or permissive. We agree.

■ A genuine issue exists when the record contains competent materials that show "two plausible, but contradictory, accounts of the essential facts." *ITT*, 854 S.W.2d at 382; *Deer Run Property Owners Ass'n v. Bedell*, 52 S.W.3d 14, 17 (Mo. App.2001). The five facts upon which the Hearods relied in their motion do not establish, as a matter of law, that Margie's possession was permissive.

Paragraphs 1 and 2 of the Hearods' motion for summary judgment asserted that Margie had placed her mobile home upon the real estate owned by Vernon and Rella and remained there with their knowledge and consent until October 2003. In Margie's deposition, she admitted these statements were true. Nevertheless, that does not render Margie's possession of the lot permissive as a matter of law.

In *State ex rel. Edie v. Shain*, 348 Mo. 119, 152 S.W.2d 174 (1941), our Supreme Court held that the requirement of hostile possession is satisfied if a person intentionally occupies real estate in the mistaken belief that he owns it:

The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he

intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. It involves two things: A present or, in the case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control. Or, in the language sometimes used in the cases, to exercise dominion over the object possessed. One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership.

*Id.* at 176–77.[6] In Margie's deposition, she gave the following testimony:

Q. Who owned the real estate when you put [the mobile home] there?

A. At the time I thought I did. My son [Vernon] had told me it was mine, but I did not know until my son died that he had only his name and his wife's on it.

Margie also presented the trial court with affidavits from five family members verifying that Vernon had told them the farm belonged to Margie.

We are required to view the record in a light most favorable to Margie, the non-moving party. So viewed, the record would support a finding by the trier of fact that Margie moved her mobile home onto the lot on Farm No. 3 in the mistaken belief that she owned the property and

6. This principle of law has been repeatedly reaffirmed. *See, e.g., Boeckmann v. Fitzpatrick*, 491 S.W.2d 524, 527 (Mo.1973); *Hedgpeth v. Maddux*, 366 S.W.2d 314, 316–17

(Mo.1963); *Barton v. Pauly*, 350 S.W.2d 748, 751–52 (Mo.1961); *Mooney v. Canter*, 311 S.W.2d 1, 4–5 (Mo.1958); *Peterson v. Harpst*, 247 S.W.2d 663, 666–67 (Mo.1952).

that her ownership interest was accurately reflected on the deed to the property. That being the case, the issue of hostility was for the jury to decide. *See Barton v. Pauly,* 350 S.W.2d 748, 751–52 (Mo.1961).

▇▇▇ Paragraph 3 of the Hearods' motion for summary judgment asserted that Margie did not pay real estate taxes on Farm No. 3. Again, Margie conceded this was true in her deposition, but she explained that "[w]hen we moved on that place my son [Vernon] asked me if he could pay the taxes, the real estate taxes, that would be their rent, you know. Every year instead of paying rent by the month they would pay the taxes on the real estate and that's what we agreed to." Payment of taxes is not conclusive on the issue of whether a person has acquired ownership of property by adverse possession. *Brown v. Evans,* 182 S.W.2d 580, 583 (Mo.1944); *Kohler v. Bolinger,* 70 S.W.3d 616, 618 n. 1 (Mo.App.2002). This principle of law is particularly apropos here because Margie's testimony would support an inference by the trier of fact that Vernon and Rella agreed to pay the real estate taxes to prevent Margie from discovering how the real estate was actually titled.

Paragraphs 4 and 5 of the Hearods' motion for summary judgment asserted that Margie did not claim to own the real estate when she filled out her 2004 Barton County tax assessment form. In this form, Margie stated that: (1) she did not claim to own any real property; and (2) Rella owned the real estate where Margie's trailer was located. We do not find these statements sufficient to support a summary judgment against Margie. Viewed most favorably to Margie, the record would support a finding by the trier of fact that Margie was in hostile, actual, open and notorious, exclusive and continu-

ous possession of the lot on which her trailer was located from 1987 through 1997. Once that 10–year time period expired, she would have been vested with title to the lot. *Lancaster v. Neff,* 75 S.W.3d 767, 772 (Mo.App.2002); *Kohler,* 70 S.W.3d at 619. At most, the contrary statements in the assessment form constitute an evidentiary admission, which is not binding on Margie. *See, e.g., Peace v. Peace,* 31 S.W.3d 467, 471 (Mo.App.2000); *Hammer v. Waterhouse,* 895 S.W.2d 95, 101 (Mo.App.1995). The tax form was not filed until January 2004. At that point, Rella had claimed ownership of Farm No. 3 and sold the property. The affidavits from Margie's family members stated that Margie was an 82–year–old woman who was unsophisticated in business and real estate matters. It is reasonable to infer that Margie may not have understood the difference between titular ownership and ownership by adverse possession. In any event, it is undisputed that Margie refused Rella's October 2003 demand to vacate the premises. Thereafter, Margie resisted the efforts of the Hearods to eject her from the property. Regardless of what Margie stated in the tax assessment form, her actions support the inference that her possession of the lot was hostile, rather than permissive.

In conclusion, the issue of whether Margie's possession of the lot was hostile or permissive presents a question of intent. *See Brinner v. Huckaba,* 957 S.W.2d 491, 495 (Mo.App.1997). "It has been consistently held that cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment." *Ganaway v. Shelter Mut. Ins. Co.,* 795 S.W.2d 554, 562 (Mo.App.1990). So it is here. The record demonstrates that there is a genuine issue of material fact as to

Margie's intent. Accordingly, the trial court erred in granting the Hearods' motion for summary judgment. *See Crowe v. Horizon Homes, Inc.,* 116 S.W.3d 618, 622 (Mo.App.2003). Margie's point on appeal is granted. The trial court's judgment is reversed, and the case is remanded.

GARRISON and BARNEY, JJ., Concur.